**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SAMUEL LAFALCE, individually and on behalf of similarly situated individuals,<br><br>*Plaintiff,*<br>v.<br><br>THE HOME DEPOT, INC.,<br><br>*Defendant.* | Case No.<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Samuel LaFalce ("Plaintiff"), individually and on behalf of others similarly situated, by and through his undersigned counsel, and for his Class Action Complaint against Defendant The Home Depot, Inc. ("Home Depot" or "Defendant"), alleges as follows based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1. This is an action for damages and any other available legal or equitable remedies, including Unjust Enrichment and Money Had and Received, resulting from Defendant's practices of incorporating the costs of unlawfully imposed tariffs

into prices charged through its respective distribution channels and retaining the resulting economic benefit after receiving corresponding tariff refunds.

2. This lawsuit arises from Defendant's retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of Defendant systematically passing on the costs of IEEPA tariffs to its own customers—including Plaintiff—through prices that incorporated those tariff costs.

3. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. On February 5, 2025, he issued Executive Order 14200 amending the duties addressing the synthetic opioid supply chain in the People's Republic of China. On March 3, 2025, he issued Executive Order 14228 further amending those duties. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 1, 2025);

Exec. Order No. 14200, 90 Fed. Reg. 9,277 (Feb. 5, 2025); Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 3, 2025); Exec. Order No. 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025) (collectively, the "Tariff Executive Orders").

4. The Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% (with the upper end reflecting the maximum cumulative IEEPA-based rate applied to certain Chinese-origin goods, comprised of a 125% reciprocal duty under Executive Order 14257 as amended and an additional 20% IEEPA fentanyl duty under Executive Order 14228) based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

5. Studies by the Federal Reserve Bank of New York find that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[1] Indeed, the Federal Reserve Bank of New York found that "nearly 90 percent of the tariffs' economic burden fell on U.S. firms and consumers" rather than foreign exporters. Although the stated purpose of the Tariff Executive Orders was to address international trade deficits and other national-emergency

---

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

concerns, the economic burden of the tariffs was substantially passed on to American consumers in the form of increased retail prices.

6. When goods are imported into the United States, the United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through administrative protest under 19 U.S.C. § 1514, refund under 19 U.S.C. § 1520, judicial action in the U.S. Court of International Trade under 28 U.S.C. § 1581(i), or, with respect to IEEPA-related tariffs, through CBP's Consolidated Administration and Processing of Entries ("CAPE") portal launched on April 20, 2026.

7. Defendant paid IEEPA tariffs when it imported the products Plaintiff and/or similarly situated consumers purchased. To offset the cost of paying IEEPA tariffs, Defendant passed those costs on through its respective distribution channels, incorporating those costs into the prices of tariffed and non-tariffed products and services.

8. On February 20, 2026, the United States Supreme Court held that the IEEPA does not authorize the President to impose the tariffs at issue. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026) (Nos. 24-1287 and 25-250) (aff'g *V.O.S.*

*Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade), aff'd in part and rev'd in part, 149 F.4th 1312 (Fed. Cir. 2025)).

9. As a result, any IEEPA tariffs charged to Defendant were unlawful for lack of statutory authorization, and Defendant is entitled to seek refunds for any tariffs it paid pursuant to the Tariff Executive Orders through either litigation in the U.S. Court of International Trade, the CAPE refund process, or other administrative refund procedures. As alleged below, substantial U.S. tariff refunds have now actually been received.

10. On May 19, 2026, in Defendant's Q1 2026 earnings call, Defendant's Chief Financial Officer ("CFO") stated that "[w]e have filed for those tariff refunds[,]" in reference to the IEEPA tariffs.[2]

11. On August 18, 2026, in Defendant's Q2 2026 earnings call, Defendant's CFO admitted that "we received $730 million in tariff refunds during the quarter. Those refunds represent the vast majority of what we would expect to receive for those IEEPA refunds that we filed for. . . Of that $730 million, $685 million reduced our cost of goods sold as they applied to products that had already

[2] https://www.investing.com/news/transcripts/earnings-call-transcript-home-depot-q1-2026-beats-forecasts-stock-dips-93CH-4698988

been sold. The remaining $45 million remains in inventory and will hit the P&L as we turn inventory through the remainder of the year."[3]

12. In that same Q2 earnings call, Defendant discussed that the tariff refund would be used to offset costs on goods over half a dozen times; not once did Defendant mention refunding the folks who had paid those inflated costs – Defendant's customers.[4]

13. As such, Defendant's shareholders stand to benefit substantially from the tariff refunds, leaving Defendant's customers holding the bag for the illegal IEEPA tariffs, a fundamentally unjust result.

14. Defendant passed its unlawful IEEPA tariff burdens onto Plaintiff and the Class members by charging elevated prices to recoup its tariff burden. Plaintiff and the Class members have been thereby deprived of money paid to Defendant for unlawful IEEPA tariffs.

15. As far as Plaintiff is aware, Defendant has made no public commitment to return any portion of those tariff refunds received or sought to the consumers who, through elevated prices, bore the economic burden of those tariffs.

16. Other corporations in Defendant's same position have enacted tariff refund programs to compensate their customers who paid higher prices for products

[3] https://www.investing.com/news/transcripts/earnings-call-transcript-home-depot-beats-q2-2026-estimates-shares-rise-93CH-4865627
[4] *Id.*

and thus bore the burden of pass-through tariff costs.[5] For example, on UPS's April 28, 2026 first-quarter 2026 earnings call, UPS's Chief Executive Officer Carol Tomé stated that UPS had remitted to the U.S. government approximately $5 billion in IEEPA tariffs that it had collected from its customers as the importer of record, that UPS was "working with the Customs Border Protection to apply for those refunds," and that "as soon as we get that money, we're going to remit it right back to our customers." FedEx separately stated it would refund corresponding tariff costs to its customers. Defendant could have enacted a similar payback program for Plaintiff and the Class members, yet it has not done so.

17. At minimum, once Defendant became entitled to IEEPA tariff refunds—and certainly now that Defendant has publicly disclosed the actual receipt of over $700 million in tariff refunds—Defendant's retention of tariff-related amounts paid by consumers became unfair, oppressive, and substantially injurious because Defendant retained the benefit of both consumer pass-through payments and the corresponding refund rights or proceeds.

---

[5] Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/. *See also UPS, FedEx will give tariff refunds back to customers that could be worth more than $5 billion*, Fortune (Apr. 29, 2026) (reporting on UPS's April 28, 2026 earnings call), https://fortune.com/2026/04/29/fedex-ups-pledging-tariff-refunds-back-to-customers/.

18. Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for common-law unjust enrichment and money had and received, and for such other equitable and legal relief as is appropriate, over IEEPA tariff refund proceeds corresponding to tariff costs previously passed through to Plaintiff and members of the Class.

**PARTIES, JURISDICTION & VENUE**

19. Plaintiff Samuel LaFalce is a citizen of the State of Kentucky. During the Class Period, Plaintiff purchased at least one product imported and distributed by Defendant at prices that incorporated, in whole or in part, IEEPA tariff costs passed through by Defendant through its pricing practices, as alleged herein.

20. Defendant The Home Depot, Inc. is a Delaware Corporation and registered with the Georgia Secretary of State to transact business in Georgia, with its principal place of business and mailing address at 2455 Paces Ferry Road, Atlanta, Georgia 30339, United States.

21. Defendant is responsible for the importation, pricing, marketing, distribution, rental and/or sale of products sold through its website and retail stores in the United States, including the products that Plaintiff purchased.

22. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy exceeds the sum or value of

$5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from at least one Defendant.

23. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendant's obligation to provide restitution or other appropriate relief to consumers who purchased products at prices incorporating IEEPA tariff costs passed through by Defendant, including where Defendant subsequently recovers corresponding IEEPA duties from the United States.

24. This Court has personal jurisdiction over Defendant. Defendant is subject to general personal jurisdiction because it maintains its principal of business in Georgia.

25. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District and Division, and a substantial part of the corporate-level pricing decisions, tariff payments, and subsequent refund-claim activity giving rise to Plaintiff's claims occurred at or were directed from Defendant's Atlanta, Georgia headquarters.

## COMMON FACTS

### ***Defendant's Business Model***

26. Defendant advertises, markets, sells, rents, and distributes hardware products and services throughout the United States, including in this District. Defendant distributes, rents, and sells hardware products and services through its brand-operated e-commerce website located at homedepot.com and through its physical stores.

27. Defendant admitted to requesting and receiving hundreds of millions of dollars in IEEPA tariff refunds.

28. Upon information and belief, the products Plaintiff purchased during the Class Period were more expensive due to the tariffs charged on goods imported into the United States during the period in which applicable IEEPA tariffs were in effect.

### ***Defendant's Pass-Through of IEEPA Tariffs to Consumers***

29. For purposes of this Complaint, the "Class Period" is defined as February 4, 2025 through February 24, 2026, the period during which the IEEPA Tariff Executive Orders were in effect, beginning on the effective date of the first such order and ending on February 24, 2026, the date by which the IEEPA tariffs at issue had ceased to be applied to imports in the wake of the U.S. Supreme Court's February 20, 2026 decision in *Learning Res., Inc.*, 607 U.S. 229 (2026).

30. Defendant has made no public commitment to return any portion of the recovered refunds to consumers while pursuing recovery of IEEPA duties, seeking the total refund and reliquidation of all IEEPA duties it paid.

31. Defendant passed on IEEPA tariff costs during the Class Period. On the Q2 2025 earnings call, Defendant admitted that, to offset tariff costs, Defendant:

a. would be "pulling back" promotions, including in the garden space;

b. was going to enact "price movement in some categories" (which, on information and belief, means that Defendant would be raising prices on some products); and

c. was approaching the tariff cost as something that would be spread out based on a "portfolio approach" because customers "tend to shop for the entire project."[6]

32. As such, throughout the Class Period, Defendant passed the cost of IEEPA tariffs to consumers, including Plaintiff and members of the Class, by incorporating those costs into the prices of tariffed and nontariffed products, both through higher sticker prices and through removal of discounts which otherwise would have been applied.

---

[6] https://www.investing.com/news/transcripts/earnings-call-transcript-home-depot-q2-2025-sees-stock-surge-despite-slight-earnings-miss-93CH-4200342

33. Throughout the Class Period, Plaintiff purchased products from Defendant. As alleged throughout the Complaint, the tariff costs borne directly by Defendant ultimately formed part of the price Plaintiff paid.

***Plaintiff's Transaction***

34. Within the Class Period, Plaintiff purchased numerous products from Defendant.

35. On information and belief, the price Plaintiff paid for the product incorporated, in part, IEEPA tariff costs incurred by Defendant in importing some of its products.

36. But for Defendant's pass-through of IEEPA tariff costs, Plaintiff would have paid lower prices for the products he purchased.

37. Defendant's retention of the unlawful IEEPA tariff costs that were passed on to Plaintiff and the Class members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to shoulder Defendant's tax burden under the IEEPA tariffs when those tariffs were unlawful and should not have been collected.

38. As a result of Defendant's practice of passing on tariff costs to its customers, Plaintiff and the Class members were forced to pay Defendant's tax burdens because Defendant passed the unlawful IEEPA tariffs on to them.

39. Plaintiff and the members of the Class have unequal bargaining power with Defendant and were unable to negotiate the payment of the unlawful IEEPA tariffs from Defendant, and therefore Plaintiff and the Class members could not avoid paying the unlawful IEEPA tariffs.

40. Allowing Defendant to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiff and members of the Class of the money paid for the cost of the unlawful IEEPA tariffs while providing nothing of value to Plaintiff or the Class members.

41. But for Defendant's charging Plaintiff and the members of the Class the cost of the unlawful IEEPA tariffs, Plaintiff and the members of the Class would not have needed to shoulder the cost of the unlawful IEEPA tariffs.

***Defendant's Tariff Refunds and Resulting Double Recovery***

42. On March 4, 2026, Senior Judge Richard K. Eaton of the U.S. Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026) (Eaton, J.); *see also id.* ECF No. 21 (original order); *id.* ECF No. 29 (Amended Order dated Mar. 5, 2026).

43. The Court of International Trade in *Atmus* reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of

the Supreme Court's decision in *Learning Resources*. The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. On March 27, 2026, the court issued an amended order expanding that directive to additional entry categories. On April 6, 2026, the *Atmus Filtration* plaintiff filed a notice of voluntary dismissal, and the Court of International Trade designated *Euro-Notions Florida, Inc. v. U.S. Customs and Border Protection*, Court No. 25-00595 (Ct. Int'l Trade), as the new lead refund-supervision case, issuing a parallel order on April 7, 2026.

44. According to the sworn declaration of Brandon Lord, the Executive Director of the Trade Programs Directorate within the Office of Trade at U.S. Customs and Border Protection, filed in *Atmus Filtration* on March 6, 2026 (ECF No. 31), as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA was approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

45. On April 20, 2026, CBP launched the Consolidated Administration and Processing of Entries ("CAPE") portal within its Automated Commercial Environment system to administer refunds of IEEPA tariffs to importers of record, with interest at the statutory rate. As of May 11, 2026, CBP had processed approximately $35.46 billion in IEEPA tariff refunds through CAPE, and the refund

program continues to expand. As importer of record for products imported into the United States during the Class Period, Defendant has been eligible to file CAPE refund claims and to receive substantial refunds of the IEEPA tariffs it paid.

46. And, as alleged above, Defendant has since publicly disclosed the actual receipt of hundreds of millions of dollars in U.S. tariff refunds.

47. To date, Plaintiff is unaware of any public commitment by Defendant to establish any mechanism to refund to consumers the tariff costs Defendant passed through to him via elevated prices during the Class Period.

48. This presents an obvious problem: Defendant has recovered (or is positioned to recover) tariff refunds on the tariffed goods it sold, while Defendant's customers have already borne the economic brunt of these tariffs by paying higher prices to Defendant. The risk of double recovery is therefore no longer merely hypothetical or imminent. Defendant has publicly disclosed that substantial tariff refunds have already been received.

49. Defendant has been paid or is positioned to be paid twice for the same tariff burden: once by its customers (including Plaintiff) through elevated prices and/or rental charges, and again through refunds of the corresponding tariff payments.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings his claims individually and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) as defined:

> All persons in the United States who, between February 4, 2025 and February 24, 2026, purchased or rented one or more products sold, imported and/or distributed by Defendant.

51. Excluded from the Class are: (1) Defendant; (2) Defendant's officers, directors, members, and managers, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their families; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendant's counsel, and their experts and consultants.

52. **Numerosity.** The proposed Class contains members so numerous that separate joinder of each member of the Class is impracticable. Upon information and belief, there are at least hundreds of thousands of proposed class members. The individuals who purchased Defendant's products during the Class Period can be ascertained through records in the possession, custody, or control of Defendant.

53. **Commonality and Predominance.** There are questions of fact and law common to the Class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendant paid IEEPA tariffs on products sold to consumers during the Class Period;
- Whether Defendant passed IEEPA tariff costs on to consumers through elevated prices;
- Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;
- Whether Defendant has been or will be unjustly enriched by receiving government refunds for tariffs it passed through to consumers;
- Whether the members of Class are entitled to restitution, actual damages, and attorneys' fees and costs.

54. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of all members of Class. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendant has no defenses unique to Plaintiff.

55. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased Defendant's products at prices that incorporated the cost of IEEPA tariffs Defendant paid and passed through to consumers. Plaintiff's claims and the claims of all members of the Class arise from the same course of conduct by Defendant—namely, Defendant's pass-through of unlawful IEEPA tariff costs to consumers through elevated prices and Defendant's retention of both those tariff-pass-through payments and the corresponding refund rights or proceeds.

56. **Rule 23(b)(2) Basis.** Defendant has acted on grounds generally applicable to the Class by incorporating IEEPA tariff costs into prices through its respective distribution channels and by retaining the corresponding refund rights or proceeds. Final declaratory relief and corresponding equitable relief are therefore appropriate with respect to the Class as a whole.

57. **Appropriateness and Superiority.** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members

of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

58. **Local Rule 23(A)(2)(f) – Jurisdictional Amount** – The amount in controversy is at least $10,000,000 and could be the entirety of Defendant's tariff refunds, estimated to currently be roughly $730 million based on Defendant's own admissions in its earnings calls.

## CAUSES OF ACTION

### <u>COUNT I</u>
### Unjust Enrichment
### (On behalf of Plaintiff and the Class)

59. Plaintiff incorporates the foregoing allegations as if fully stated herein.

60. Plaintiff and the members of the Class conferred monetary benefits on Defendant directly through purchases of products whose prices incorporated IEEPA tariff costs.

61. Defendant has been unjustly enriched because it received and retained monetary benefits attributable to sales of products whose prices incorporated IEEPA tariff costs, while also retaining the right to seek or receive refunds, credits, reliquidation, or other recovery of those same tariff costs from the government.

62. Defendant knew and appreciated the benefit it received because the prices paid by Plaintiff and the Class included amounts attributable to IEEPA tariff costs. At minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent refund-related proceedings, Defendant knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through the prices they paid.

63. Defendant's retention of these benefits is unjust and inequitable now that Defendant is positioned to retain both the tariff-related amounts collected from consumers and the corresponding refund rights or proceeds from the government.

64. The IEEPA tariffs were subsequently determined to lack statutory authorization, making the tariff payments refundable or recoverable by importers such as Defendant.

65. There is no adequate remedy at law for Plaintiff and the members of the Class, as Defendant has established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

66. Under principles of equity and good conscience, it would be unjust to permit Defendant to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds already received or subsequently received for those same tariff costs.

67. Plaintiff and the other members of the Class are entitled to restitution in the amount by which Defendant has been unjustly enriched, and an order requiring Defendant to disgorge any profits or other benefit it has retained as a result of its unjust and unlawful conduct over IEEPA tariff refund proceeds corresponding to tariff costs previously passed through to Plaintiff and members of the Class.

## COUNT II
**Money Had and Received**
**(On behalf of Plaintiff and the Class)**

68. Plaintiff incorporates all of the allegations and statements made above as if fully stated herein.

69. This Count is pleaded in the alternative to Count I. While Count I (Unjust Enrichment) addresses the inequity of Defendant's retention of consumer overcharges already collected, this Count more particularly addresses Defendant's actual (and anticipated) receipt and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by members of the Class, not by Defendant.

70. Defendant received monetary benefits attributable to Plaintiff's and Class members' purchases through prices that incorporated IEEPA tariff costs passed through Defendant's respective distribution channels.

71. The monetary benefits Defendant received included amounts attributable to IEEPA tariff costs that Defendant, the importer of record, had paid to U.S. Customs and Border Protection as duties on imported goods.

72. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Res., Inc.*, 607 U.S. 229 (2026).

73. Defendant has recovered and remains positioned to recover substantial refunds of IEEPA tariffs from the U.S. government. Upon information and belief, Defendant has not paid or distributed any portion of these anticipated refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

74. The money that Defendant has recovered and may continue to recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the proposed Class—the consumers who paid elevated prices due to Defendant's tariff pass-through.

75. Defendant has not returned this money to Plaintiff or the Class.

76. In equity and good conscience, Defendant should not be permitted to retain the funds it recovers or has recovered from the government as IEEPA tariff

refunds. Those funds belong, in equity, to Plaintiff and the Class, and Defendant is obligated to return them.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully request that the Court enter an order awarding the following relief as pled herein and judgment against Defendant as follows:

A. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as Class representative, and appointing his counsel as Class counsel;

B. An equitable accounting of all IEEPA-related duties paid by Defendant during the Class Period, all CAPE refund applications and other refund requests submitted by Defendant to U.S. Customs and Border Protection, and all refund proceeds received or anticipated to be received by Defendant;

C. An award of reasonable attorneys' fees, costs, and other litigation expenses;

D. An award of pre- and post-judgment interest as available under law;

E. The disgorgement of any funds in the amount Defendant was unjustly enriched by its conduct;

F. Ordering Defendant to provide restitution, reimbursement, or other appropriate relief with respect to tariff-related amounts incorporated into consumer prices for which Defendant received or receives corresponding refunds, credits, reliquidation benefits, reimbursements, or other governmental recoveries; and

G. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: November 16, 2026

Respectfully submitted,

SAMUEL LAFALCE, individually and on behalf of similarly situated individuals.

By: /s/ *Mark E. Silvey*

Mark E. Silvey (GA # 646837)
BRYSON HARRIS SUCIU & DeMAY PLLC
800 S. Gay Street
Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
msilvey@brysonpllc.com

Donald S. Cuba II (*Pro Hac Vice* forthcoming)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002

dcuba@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*